## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**LASTREASE LEWIS**
**on behalf of MLKE[1]**                                            **PLAINTIFF**

**v.**                          **4:09CV00482 WRW/BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration,**                        **DEFENDANT**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections:**

          This recommended disposition has been sent to United States District Judge William

R. Wilson.  Within fourteen (14) days after being served with a copy of the recommended

disposition, any party may serve and file with the Clerk of this Court specific written

objections to the proposed findings and recommendations.  A copy of the objections must be

served on the opposing party, who may respond within fourteen (14) days after being served.

          The District Judge may accept, reject, or modify the recommended disposition;

receive further evidence; or return the matter to the Magistrate Judge with instructions.  See

Fed. R. Civ. P. 72(b); Local Rule  72.1(VIII)(C), Rules of the United States District Court

for the Eastern District of Arkansas.

**II.   Discussion:**

          Plaintiff, Lastrease Lewis, has appealed the final decision of the Commissioner of the

Social Security Administration to deny her claim for Supplemental Security Income (SSI) on

behalf of her minor daughter, MLKE (Claimant).  Both parties have filed appeal briefs and

the case is ready for decision.

---

   [1] Claimant is a minor.  (Tr. 68, 288)  In accordance with Fed.R.Civ.P. 5.2(a), only her initials
should be used in Court filings.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole.  42 U.S.C. §§ 405(g), 1383(c)(3); *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005); see *Young ex rel. Trice v. Shalala*, 52 F.3d 200, 201-02 (8th Cir. 1995)(substantial evidence review in child benefits case).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore ex rel. Moore v. Barnhart*, 413 F.3d at 721.

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.  *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The Commissioner found Claimant not disabled within the meaning of the Social Security Act.  The only issue before this Court is whether the Commissioner's decision that Claimant was not disabled within the meaning of the Act is supported by substantial evidence.

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I) (1996).

After conducting an administrative hearing, the Administrative Law Judge[2] (ALJ) concluded that Claimant had not been under a disability within the meaning of the Social Security Act at any time through July 24, 2008, the date of his decision.  (Tr. 28)  On May

---

[2]  The Honorable. Mark S. Anderson.

12, 2009, the Appeals Council received and considered additional evidence, but denied Plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 5-7)  Plaintiff then filed her complaint initiating this appeal. (Docket #1)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

At the time of the administrative hearing, Claimant was six years old, and a student in kindergarten.  (Tr. 288)  In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used which is comparable to the five-step sequential evaluation process utilized for adults.  20 C.F.R. § 416.924(a) (2007).

The first step is a determination whether the child is engaged in substantial gainful activity.  *Id.*, § 416.924(b).  If so, benefits are denied; if not, the evaluation continues to the next step.

The second step involves a determination whether an impairment or combination of impairments is severe, *i.e.*, more than a slight abnormality that causes no more than minimal functional limitations.  *Id.*, § 416.924(c).  If not, benefits are denied; if so, the evaluation continues.

The third step involves a determination whether the child has an impairment that meets, medically equals or functionally equals in severity a Listed impairment.  *Id.*, § 416.924(d).  If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

The ALJ found that Claimant had never engaged in substantial gainful activity.  (Tr. 20)  He determined she did have a "severe" impairment, cognitive delays, but that she did not have any impairment or combination of impairments that met or medically equaled a

3

Listing or that functionally equaled a Listed impairment.  *Id.*  Consequently, he found that she was not disabled.  (Tr. 17, 28)

Since Claimant had a "severe" impairment, but it did not meet or medically equal a Listing, it was necessary for the ALJ to determine whether the impairment functionally equaled a Listing.  20 C.F.R. § 416.926a(a) (2007).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the Welfare Reform Act), P.L. 104-193, 110 Stat. 2105 (codified in scattered sections of 42 U.S.C.), required implementing regulations.  One significant change that the final regulations made from the interim final regulations is the manner of determining functional equivalence.  There is now a single method of evaluating functional equivalence based only on domains of functioning.  Under this regulation, an impairment is functionally equivalent to a Listing when the impairment results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning.  20 C.F.R. § 416.926a(a) (2007).

A "marked" limitation in a domain seriously interferes with a child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2) (2007).  It also means a limitation that is "more than moderate" but "less than extreme."  *Id.*  It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.  *Id.*

An "extreme" limitation in a domain very seriously interferes with a child's ability to independently initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(3) (2007).  "Extreme" limitation also means a limitation that is "more than marked."  *Id.*  It is the rating given to the worst limitations.  *Id.*  It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean.  *Id.*

The domains of functioning are:

1) Acquiring and using information;

2) Attending and completing tasks;

3) Interacting and relating with others;

4) Moving about and manipulating objects;

5) Caring for oneself; and

6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(I-vi) (2007).  These domains are described in greater detail, with examples, in the regulations.  20 C.F.R. § 416.926a(g)-(l) (2007).

Plaintiff argues Claimant had marked or extreme limitation of function in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects and physical well-being.  (Br. 8-9)  Plaintiff points to no record evidence in support of her contentions, but rather paraphrases portions of the regulations which give examples of limited functioning in the different domains.  *Id.*  Such a failure to cite to the record in support of an argument constitutes waiver of the argument.

> [W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.  As we recently said in a closely analogous context: "Judges are not expected to be mind[]readers.  Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

*United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), *cert. denied*, 494 U.S. 1082 (1992)(citations omitted); accord, *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out-of-hand conclusory assertion that the ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts

regarding Listings); *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument waived by inadequate briefing); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaint fails to frame and develop issue sufficiently to invoke appellate review); *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1212 (7th Cir. 1993) (failure to press a point, even if mentioned, and to support it with proper argument and authority forfeits it) (Posner, C.J.); *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (it is obligatory that appellant claiming error as to factual determination provide court with essential references to record to carry burden of proving error); *Leer v. Murphy*, 844 F.2d 628, 635 (9th Cir. 1988) (issues raised in brief which are not supported by argument are deemed abandoned).

Nevertheless, the Court will briefly discuss the contested domains.

(g) *Acquiring and using information.*  In this domain, we consider how well you acquire or learn information, and how well you use the information you have learned.

(1) *General.* (i) Learning and thinking begin at birth. You learn as you explore the world through sight, sound, taste, touch, and smell.  As you play, you acquire concepts and learn that people, things, and activities have names. This lets you understand symbols, which prepares you to use language for learning.  Using the concepts and symbols you have acquired through play and learning experiences, you should be able to learn to read, write, do arithmetic, and understand and use new information.

(ii) Thinking is the application or use of information you have learned. It involves being able to perceive relationships, reason, and make logical choices.  People think in different ways.  When you think in pictures, you may solve a problem by watching and imitating what another person does.  When you think in words, you may solve a problem by using language to talk your way through it.  You must also be able to use language to think about the world and to understand others and express yourself; *e.g.*, to follow directions, ask for information, or explain something.

(2)  *Age group descriptors.*  . . . .

(iii) *Preschool children (age 3 to attainment of age 6).*  When you are old enough to go to preschool or kindergarten, you should begin to learn and use the skills that will help you to read and write and do arithmetic when you are older.  For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read.  Counting, sorting shapes, and building with blocks are skills needed to learn math.  Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe

things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you.  All of these are called "readiness skills," and you should have them by the time you begin first grade.

(iv) *School-age children (age 6 to attainment of age 12)*. When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science.  You will need to use these skills in academic situations to demonstrate what you have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions.  You will also need to use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change).  You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.
. . . .

(3) *Examples of limited functioning in acquiring and using information.* The following examples describe some limitations we may consider in this domain.  Your limitations may be different from the ones listed here.  Also, the examples do not necessarily describe a "marked" or "extreme" limitation.  Whether an example applies in your case may depend on your age and developmental stage; *e.g.*, an example below may describe a limitation in an older child, but not a limitation in a younger one.  As in any case, your limitations must result from your medically determinable impairment(s).  However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You do not demonstrate understanding of words about space, size, or time; *e.g.*, in/under, big/little, morning/night.

(ii) You cannot rhyme words or the sounds in words.

(iii) You have difficulty recalling important things you learned[ ]in school yesterday.

(iv) You have difficulty solving mathematics questions or computing arithmetic answers.

(v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a (2007).

The ALJ addressed evidence relating to the domain:

However, based on results of a psychological evaluation, the undersigned finds the claimant has less than marked limitations in the area of acquiring and using information.  According to the Wechsler Preschool and Primary Scale of Intelligence-Third Edition (wppsi-III), the claimant obtained a standard score of 86 in Verbal IQ, 73 in Performance IQ, and 77 in Full Scale IQ.  The functional level for these scores is categorized as low average, borderline, and borderline, respectfully.  The Behavior Assessment System for Children-Second Edition Manual, which is an integrated assessment system that uses a

variety of methods to gather information about a child, yielded behavioral concerns with "at risk" scores in the areas of hyperactivity and atypicality. It was recommended that the claimant undergo day treatment and early intervention services to address developmental delays and mental health therapy services to address behavior concerns and work on consistent disciplining. Therefore, the undersigned finds the claimant has less than marked limitations with acquiring and using information . . . .

(Tr. 22-23)  His finding is supported by substantial evidence.

(h) *Attending and completing tasks.*  In this domain, we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them.

(1) *General.* (i) Attention involves regulating your levels of alertness and initiating and maintaining concentration.  It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance.  This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed.  It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.

(ii) Adequate attention is needed to maintain physical and mental effort and concentration on an activity or task.  Adequate attention permits you to think and reflect before starting or deciding to stop an activity.  In other words, you are able to look ahead and predict the possible outcomes of your actions before you act.  Focusing your attention allows you to attempt tasks at an appropriate pace.  It also helps you determine the time needed to finish a task within an appropriate time-frame.

(2) *Age group descriptors.* . . . .

(iii) *Preschool children (age 3 to attainment of age 6).*  As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects.  You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys.  You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.

(iv) *School-age children (age 6 to attainment of age 12).*  When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments.  You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.  You should also

be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.
                . . . .
 *Examples of limited functioning in attending and completing tasks.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here.  Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; *e.g.*, an example below may describe a limitation in an older child, but not a limitation in a younger one.  As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
        (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
        (ii) You are slow to focus on, or fail to complete activities of interest to you, *e.g.*, games or art projects.
        (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
        (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
        (v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a (2007).

    In July, 2006, Plaintiff completed a Function Report- Child Age 3 to 6th Birthday.

(Tr. 88-95, 96-103[3])  Plaintiff indicated Claimant played games like tag and hide-and-seek

and board games like checkers or Candyland.  (Tr. 93, 101)  She dressed herself with help.

(Tr. 94, 102)  She put toys away.  *Id.*  She could pay attention and stick to a task for fifteen

minutes.  *Id.*  Plaintiff did not testify to any problems in this domain.  (Tr. 289-92)  The ALJ

found Claimant had no limitation in attending and completing tasks.  (Tr. 24)  That finding

is supported by substantial evidence.

        (i) *Interacting and relating with others.* In this domain, we consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.

---

    [3] There is some duplication of the record.

(1) *General.* (i) Interacting means initiating and responding to exchanges with other people, for practical or social purposes. You interact with others by using facial expressions, gestures, actions, or words. You may interact with another person only once, as when asking a stranger for directions, or many times, as when describing your day at school to your parents. You may interact with people one-at-a-time, as when you are listening to another student in the hallway at school, or in groups, as when you are playing with others.

(ii) Relating to other people means forming intimate relationships with family members and with friends who are your age, and sustaining them over time. You may relate to individuals, such as your siblings, parents or best friend, or to groups, such as other children in childcare, your friends in school, teammates in sports activities, or people in your neighborhood.

(iii) Interacting and relating require you to respond appropriately to a variety of emotional and behavioral cues. You must be able to speak intelligibly and fluently so that others can understand you; participate in verbal turn[]taking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully.

(iv) Your activities at home or school or in your community may involve playing, learning, and working cooperatively with other children, one-at-a-time or in groups; joining voluntarily in activities with the other children in your school or community; and responding to persons in authority (*e.g.*, your parent, teacher, bus driver, coach, or employer).

(2) *Age group descriptors.* . . . .

(iii) *Preschool children (age 3 to attainment of age 6).* At this age, you should be able to socialize with children as well as adults. You should begin to prefer playmates your own age and start to develop friendships with children who are your age. You should be able to use words instead of actions to express yourself, and also be better able to share, show affection, and offer to help. You should be able to relate to caregivers with increasing independence, choose your own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. You should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what you say most of the time.

(iv) *School-age children (age 6 to attainment of age 12).* When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

. . . .

(3) *Examples of limited functioning in interacting and relating with others.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation.

Whether an example applies in your case may depend on your age and developmental stage; *e.g.*, an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
(i) You do not reach out to be picked up and held by your caregiver.
(ii) You have no close friends, or your friends are all older or younger than you.
(iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
(iv) You have difficulty playing games or sports with rules.
(v) You have difficulty communicating with others; *e.g.*, in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
(vi) You have difficulty speaking intelligibly or with adequate fluency.

20 C.F.R. § 416.926a (2007).

On the Function Report, Plaintiff indicated Claimant could be understood by people who knew her well most of the time and by people who did not know her, some of the time. (Tr. 90, 98)  She asked a lot of "what, why and where" questions, used complete sentences of more than four words most of the time, talked about what she was doing, took part in conversations with other children and asked for what she wanted.  (Tr. 91, 99)  She enjoyed being with other children her same age, showed affection towards other children and her parents, shared toys, took turns and played games.  (Tr. 93, 101)  Plaintiff did not testify to any problems in interacting and relating with others.  (Tr. 289-92)  The ALJ found no limitation of function in this domain.  (Tr. 25)  Substantial evidence supports that finding.

(j) *Moving about and manipulating objects.* In this domain, we consider how you move your body from one place to another and how you move and manipulate things.  These are called gross and fine motor skills.
(1) *General.* (i) Moving your body involves several different kinds of actions: Rolling your body; rising or pulling yourself from a sitting to a standing position; pushing yourself up; raising your head, arms, and legs, and twisting your hands and feet; balancing your weight on your legs and feet; shifting your weight while sitting or standing; transferring yourself from one surface to another; lowering yourself to or toward the floor as when bending, kneeling, stooping, or crouching; moving yourself forward and backward in

space as when crawling, walking, or running, and negotiating different terrains (*e.g.*, curbs, steps, and hills).

(ii) Moving and manipulating things involves several different kinds of actions: Engaging your upper and lower body to push, pull, lift, or carry objects from one place to another; controlling your shoulders, arms, and hands to hold or transfer objects; coordinating your eyes and hands to manipulate small objects or parts of objects.

(iii) These actions require varying degrees of strength, coordination, dexterity, pace, and physical ability to persist at the task.  They also require a sense of where your body is and how it moves in space; the integration of sensory input with motor output; and the capacity to plan, remember, and execute controlled motor movements.

(2) *Age group descriptors–*  . . . .

(iii) *Preschool children (age 3 to attainment of age 6).* As a preschooler, you should be able to walk and run with ease. Your gross motor skills should let you climb stairs and playground equipment with little supervision, and let you play more independently; *e.g.*, you should be able to swing by yourself and may start learning to ride a tricycle.  Your fine motor skills should also be developing.  You should be able to complete puzzles easily, string beads, and build with an assortment of blocks.  You should be showing increasing control of crayons, markers, and small pieces in board games, and should be able to cut with scissors independently and manipulate buttons and other fasteners.

(iv) *School-age children (age 6 to attainment of age 12).*  As a school-age child, your developing gross motor skills should let you move at an efficient pace about your school, home, and neighborhood.  Your increasing strength and coordination should expand your ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports.  Your developing fine motor skills should enable you to do things like use many kitchen and household tools independently, use scissors, and write.

. . . .

(3) *Examples of limited functioning in moving about and manipulating objects.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; *e.g.*, an example below may describe a limitation in an older child, but not a limitation in a younger one.  As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You experience muscle weakness, joint stiffness, or sensory loss (*e.g.*, spasticity, hypotonia, neuropathy, or paresthesia) that interferes with your motor activities (*e.g.*, you unintentionally drop things).

(ii) You have trouble climbing up and down stairs, or have jerky or disorganized locomotion or difficulty with your balance.

(iii) You have difficulty coordinating gross motor movements (*e.g.*, bending, kneeling, crawling, running, jumping rope, or riding a bike).
(iv) You have difficulty with sequencing hand or finger movements.
(v) You have difficulty with fine motor movement (*e.g.*, gripping or grasping objects).
(vi) You have poor eye-hand coordination when using a pencil or scissors.

20 C.F.R. § 416.926a(j) (2007).

On the Function Report, Plaintiff indicated Claimant could catch a large ball, ride a big wheel, tricycle or bike with training wheels, wind up a toy and play games such as hide-and-seek and tag. (Tr. 93, 101) She could eat by herself using a fork and spoon, dress herself with help and brush her teeth with help. (Tr. 94, 102) Plaintiff did not testify to any problems in moving about and manipulating objects. (Tr. 289-92) The ALJ found no limitation of function in this domain. (Tr. 26) Substantial evidence supports that finding.

(l) *Health and physical well-being.* In this domain, we consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) of this section. When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause "extreme" limitation in your functioning, you will generally have an impairment(s) that "meets" or "medically equals" a listing.
(1) A physical or mental disorder may have physical effects that vary in kind and intensity, and may make it difficult for you to perform your activities independently or effectively. You may experience problems such as generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain.
(2) In addition, the medications you take (*e.g.*, for asthma or depression) or the treatments you receive (*e.g.*, chemotherapy or multiple surgeries) may have physical effects that also limit your performance of activities.
(3) Your illness may be chronic with stable symptoms, or episodic with periods of worsening and improvement. We will consider how you function during periods of worsening and how often and for how long these periods occur. You may be medically fragile and need intensive medical care to maintain your level of health and physical well-being. In any case, as a result of the illness itself, the medications or treatment you receive, or both, you may experience physical effects that interfere with your functioning in any or all of your activities.

13

(4) *Examples of limitations in health and physical well-being.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; *e.g.*, an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You have generalized symptoms, such as weakness, dizziness, agitation (*e.g.*, excitability), lethargy (*e.g.*, fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s).

(ii) You have somatic complaints related to your impairments (*e.g.*, seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia).

(iii) You have limitations in your physical functioning because of your treatment (*e.g.*, chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments).

(iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical functioning.

(v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

(m) *Examples of impairments that functionally equal the listings.* The following are some examples of impairments and limitations that functionally equal the listings. Findings of equivalence based on the disabling functional limitations of a child's impairment(s) are not limited to the examples in this paragraph, because these examples do not describe all possible effects of impairments that might be found to functionally equal the listings. As with any disabling impairment, the duration requirement must also be met (see §§ 416.909 and 416.924(a)).

(1) Documented need for major organ transplant (*e.g.*, liver).

(2) Any condition that is disabling at the time of onset, requiring continuing surgical management within 12 months after onset as a life-saving measure or for salvage or restoration of function, and such major function is not restored or is not expected to be restored within 12 months after onset of this condition.

(3) Frequent need for a life-sustaining device (*e.g.*, central venous alimentation catheter), at home or elsewhere.

(4) Effective ambulation possible only with obligatory bilateral upper limb assistance.

(5) Any physical impairment(s) or combination of physical and mental impairments causing complete inability to function independently outside the area of one's home within age-appropriate norms.

(6) Requirement for 24-hour-a-day supervision for medical (including psychological) reasons.

14

(7) Infants weighing less than 1200 grams at birth, until attainment of 1 year of age.

(8) Infants weighing at least 1200 but less than 2000 grams at birth, and who are small for gestational age, until attainment of 1 year of age. (Small for gestational age means a birth weight that is at or more than 2 standard deviations below the mean or that is below the 3rd growth percentile for the gestational age of the infant.)

(9) Major congenital organ dysfunction which could be expected to result in death within the first year of life without surgical correction, and the impairment is expected to be disabling (because of residual impairment following surgery, or the recovery time required, or both) until attainment of 1 year of age.

(10) Gastrostomy in a child who has not attained age 3.

20 C.F.R. § 416.926a(l-m) (2007).

Plaintiff did not testify to any problems in health and physical well-being. (Tr. 289-92) The ALJ found no limitation of function in this domain. (Tr. 27) Substantial evidence supports that finding.

Next, Plaintiff contends that her testimony was credible. (Br. 12-13) The ALJ found Plaintiff's testimony was not fully credible to the extent that she alleged impairments so severe as to preclude the performance of all sustained functional activities. (Tr. 21-22) Actually, the ALJ could have fully believed all of Plaintiff's testimony and still have come to a conclusion that Claimant was not disabled, because Plaintiff did not testify to disabling levels of impairment. (Tr. 286-93) In any event, the ALJ's credibility analysis was proper. He followed the law and regulations, made express credibility findings and gave his reasons for discrediting Plaintiff's testimony. *E.g.*, *Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008); *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995). His credibility findings are entitled to deference as long as they are supported by good reasons and substantial evidence. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Next, Plaintiff contends that intervention services failed to improve Claimant's behavior. (Br. 13-15) The ALJ detailed her improvement with therapy:

15

Follow up occupational and physical therapy evaluations determined that the claimant needed these services to address her delays including moderate grasping, severe motor coordination, moderate overall fine motor and gross motor delays.

It appears that the above services helped in treating the claimant's condition because followup reports show the claimant's condition improved.  A Speech Pathology Evaluation dated April 17, 2006 reveals the claimant's articulation skills are within normal limits for her age.  She attained scores within the normal limits for auditory comprehension and expressive communication.  The scores indicate normal expressive and receptive language skills for her age.  Informal observation determined oral-motor skills to be adequate for feeding and speech skills.  Parameters for voice and fluency were determined to be within normal limits.  She localized to speech and nonspeech sounds throughout the assessment.  Therefore, it was not recommended that she received speech therapy services.

An Occupational Therapy Evaluation dated March 15, 2007 showed she demonstrated age appropriate fine motor skills.  Thus, occupational therapy was not recommended.

Finally, a Physical Therapy Evaluation dated March 21, 2007 revealed no gross motor delay was present.  She had no significant weaknesses.  Her gross motor skills were currently at an age appropriate level.  Thus, physical therapy was not recommended.

According to a Psychological/Developmental Evaluation, the claimant was assessed with cognitive delays.  Records indicate she has a history of behavior problems including poor impulse control, opposition, and hyperactivity.  During testing, she quickly became easily distracted and required frequent redirection to complete the items at hand.  She also interrupted the examiner several times during the testing session.  Her overall intellectual ability fell within the borderline range of functioning with a Full Scale IQ of 77.

Based on the medical evidence, the undersigned is persuaded that the claimant has an impairment that could reasonably be expected to produce the symptoms the claimant alleges and which would impact on her ability to perform functional activities.  However, to the extent that the claimant's mother alleges impairments so severe as to preclude the performance of all sustained functional activity, the undersigned does not find her fully credible.  Specifically, the undersigned does not find the claimant's cognitive delay affects her day-to-day functioning to the point that it causes very serious limitations in one activity or the interactive and cumulative effects of her impairment limits several activities.  Subsequent reports reveal the claimant made significant improvement in her challenged areas; therefore, additional therapy was not recommended.

(Tr. 21-22)  Thus, Plaintiff's argument lacks merit.  It is important to note that, even if

intervention services did not improve Claimant's behavior, that fact, without more, does not

necessarily mean that Claimant was disabled.

Finally, Plaintiff contends that Claimant met two Listings, 12.05 and 12.02.  (Br. 15-

17)  Those are adult Listings.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 Parts A & B. (1997).

The child equivalent of 12.05 is 112.05.  It reads as follows:

> 112.05  *Mental Retardation:*  Characterized by significantly subaverage
> general intellectual functioning with deficits in adaptive functioning.
> The required level of severity for this disorder is met when the
> requirements in A, B, C, D, E, or F are satisfied.
> A. For older infants and toddlers (age 1 to attainment of age 3),
> resulting in at least one of the appropriate age-group criteria in paragraph B1
> of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least
> two of the appropriate age-group criteria in paragraph B2 of 112.02;
>
> OR
>
> B. Mental incapacity evidenced by dependence upon others for personal
> needs  (grossly in excess of age-appropriate dependence) and inability to
> follow directions such that the use of standardized measures of intellectual
> functioning is precluded;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a
> physical or other mental impairment imposing additional and significant
> limitation of function;
>
> OR
>
> E. A valid verbal, performance, or full scale IQ of 60 through 70 and:
> 1. For older infants and toddlers (age 1 to attainment of age 3), resulting
> in attainment of development or function generally acquired by children no
> more than two-thirds of the child's chronological age in either paragraphs B1a
> or B1c of 112.02; or
> 2. For children (age 3 to attainment of age 18), resulting in at least one
> of paragraphs B2b or B2c or B2d of 112.02;
>
> OR

17

F. Select the appropriate age group:
1. For older infants and toddlers (age 1 to attainment of age 3), resulting in attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in paragraph B1b of 112.02, and a physical or other mental impairment imposing additional and significant limitations of function;

OR

2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing additional and significant limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007).

The pertinent referenced paragraphs 112.02B2 read as follows:

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.02B (2007).

Specifically, Plaintiff contends that the Listing is met by a valid IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.  (Br. 15-16)  On November 15, 2005, Claimant was administered the Wechsler Preschool and Primary Scale of Intelligence-Third Edition (WPPSI-III).  (Tr. 132)  She scored a verbal IQ of 86, performance IQ of 73 and full-scale IQ of 77.  (Tr. 133)  On

18

November 21, 2006, she was again administered the WPPSI-III.  (Tr. 210)  She scored a

verbal IQ of 75, performance IQ of 70 and full-scale IQ of 70.  (Tr. 211)  On July 31, 2007,

she was administered the WPPSI-III a third time.  (Tr. 205)  She scored a verbal IQ of 80,

performance IQ of 81 and full-scale IQ of 78.  (Tr. 206)  While the two scores of 70 on the

November 21, 2006, arguably met the first prong Listing 112.05D, the psychologist

characterized those scores as borderline rather than mentally retarded.  (Tr. 211)  Borderline

intellectual functioning is an IQ in the 71-84 range.  Diagnostic and Statistical Manual of

Mental Disorders 740 (4th ed., Text Revision 2000) (DSM-IV-TR).  Mild mental retardation

equals an IQ level of 50-55 to approximately 70.  *Id.* 42.

     In addition, only the July, 2007, scores were sufficiently current to be utilized.

> IQ test results must also be sufficiently current for accurate assessment
> under 112.05.  Generally, the results of IQ tests tend to stabilize by the age of
> 16.  Therefore, IQ test results obtained at age 16 or older should be viewed as
> a valid indication of the child's current status, provided they are compatible
> with the child's current behavior.  IQ test results obtained between ages 7 and
> 16 should be considered current for 4 years when the tested IQ is less than 40,
> and for 2 years when the IQ is 40 or above.  IQ test results obtained before age
> 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or
> above.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00 D 10 (2007).

     Furthermore, a Disability Determination Services physician determined that Claimant

had a "severe" impairment, but did not meet a Listing.  (Tr. 118)  The ALJ is entitled to rely

on the opinions of reviewing physicians when considering whether the claimant meets the

requirements of a listed impairment.  *Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir. 1996).

     Perhaps most importantly, Plaintiff's points to no evidence of "a physical or other

mental impairment imposing additional and significant limitation of function."  (Br. 16)

Plaintiff has the burden of showing that Claimant met a Listing.  *Gonzales v. Barnhart*, 465

F.3d 890, 894 (8th Cir. 2006); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004);

*Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).  She did not meet her burden.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g.*, *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

## III.   Conclusion:

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; see also *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

For these reasons, the Court hereby recommends that the District Court affirm the final determination of the Commissioner and dismiss Plaintiff's complaint with prejudice.

DATED this 15th day of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE